CLERK'S OFFICE U.S. DIST. COURT
AT CHARLOTTESVILLE, VA
FILED

SEP 1 1 2007

JOHN F. CORCORAN, CLERK
BY: /s/
     DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| | |
|---|---|
| NILDA N. VENEY, | CASE NO. 3:07CV00004 |
| Plaintiff, | |
| v. | REPORT AND RECOMMENDATION |
| MICHAEL J. ASTRUE, Commissioner of Social Security[1], | By: B. Waugh Crigler<br>U. S. Magistrate Judge |
| Defendant. | |

This challenge to a final decision of the Commissioner which denied plaintiff's April 30, 2004 protectively filed claim for supplemental security income under the Social Security Act ("Act"), as amended, 42 U.S.C. § 1381 is before this court under authority of 28 U.S.C. § 636(b)(1)(B) to render to the presiding District Judge a report setting forth appropriate findings, conclusions and recommendations for the disposition of the case. The questions presented are whether the Commissioner's final decision is supported by substantial evidence, or whether there is good cause to remand for further proceedings. 42 U.S.C. § 405(g). For the reasons that follow, the undersigned will RECOMMEND that an order enter AFFIRMING the Commissioner's final decision, GRANTING the Commissioner's motion for summary judgment, and DISMISSING this case from the docket of the court.

In a decision eventually adopted as a final decision of the Commissioner, an Administrative Law Judge (Law Judge) found that plaintiff was alleging a disability onset date of January 1, 1999, and that she had not engaged in substantial gainful activity during the relevant

---

[1]On February 12, 2007, Michael J. Astrue became the Commissioner of Social Security. In accordance with Rule 25(d)(1) of the Federal Rules of Civil Procedure, he should be substituted for Jo Anne B. Barnhart as the defendant.

time period. (R. 17, 19.) The Law Judge also found that plaintiff has the following severe impairments: diabetes mellitus, hypertension, degenerative disc disease of the lumbar spine and right hip, and obesity[2]. (R. 19.) The Law Judge determined that these impairments, when viewed individually or in combination, were not severe enough to meet or equal any listed impairment. (R. 20.) The Law Judge was of the view that although the medically determinable impairments reasonably could be expected to produce a degree of the alleged symptoms, her statements concerning the intensity, duration, and limiting effects of these symptoms were "not entirely credible." (R. 21.) The Law Judge concluded that plaintiff retained the residual functional capacity (RFC) to perform a wide range of light work, but she was precluded from performing her past relevant work.[3] (R. 20, 23.) By application of the Medical-Vocational Guidelines ("grids"), the Law Judge found that under Rules 202.13 and 202.20 there were jobs available to plaintiff.[4] (R. 23-24.) Thus, the Law Judge ultimately found that she was not disabled under the Act.[5] (R. 24-25.)

---

[2]At her hearing before the Law Judge on March 14, 2006, plaintiff testified she is 5' 3" and weighed 306 pounds when she was last weighed. (R. 189.)

[3]Plaintiff last worked in 1990 as a housekeeper, an unskilled medium exertional position. (R. 23, 197.) At plaintiff's hearing, the Law Judge noted that because plaintiff had not worked at any job in the last fifteen years, she did not have any past relevant work. (R. 197.)

[4]The Law Judge referred to testimony provided by the vocational expert (VE) that the jobs of food preparation and assembler were representative of the type of work available to plaintiff. (R. 24, 197-198.)

[5]Although not addressed by the Law Judge, the record reflects that plaintiff used cocaine and heroin prior to and during 2002, after her alleged disability onset date of January 1, 1999. (120, 121, 134, 195.) Having determined that plaintiff was not disabled, the Law Judge didn't need to address the impact of her drug addiction. *See* 20 C.F.R. § 416.935; *Begley v. Astrue*, 2007 WL 2138703 *10 (WD Va. 2007)(holding that a claimant shall not be considered disabled if alcoholism or drug addiction would be a contributing factor material to the finding of

2

Plaintiff appealed the Law Judge's decision to the Appeals Council, which found no basis in the record, or in the reasons advanced on appeal, to review the Law Judge's decision. (R. 7-9.) Accordingly, the Appeals Council denied review and adopted the Law Judge's decision as the final decision of the Commissioner. This action ensued.

In a brief filed in support of her motion for summary judgment, plaintiff initially argues that the Law Judge erred in finding that her obstructive sleep apnea was not a severe impairment.[6] (Plaintiff's Brief, pp. 5-8.) Specifically, plaintiff contends that her sleep apnea causes low energy, fatigue, poor sleep, and shortness of breath. (Pl's Brief, pp. 6-7.) She argues that the Law Judge erred in failing to properly evaluate these reported symptoms. (Pl's Brief, pp. 5-8.)

The Law Judge's finding that plaintiff's allegations regarding the intensity, duration and limiting effects of the symptoms caused by her sleep apnea were "not entirely credible" is supported by substantial evidence. The Law Judge evaluated plaintiff's claims of symptoms caused by her sleep apnea and found that the condition is controlled with the use of a continuous positive airway pressure ("CPAP"). (R. 21.)

The record shows that on May 20, 2005, Paul M. Suratt, M.D. performed sleep studies on plaintiff. (R. 174-183.) These tests confirmed that she has sleep apnea and that with the use of a CPAP her apneas are "eliminated." (R. 174.) Even so, the record shows that plaintiff elected to only "intermittently" use the CPAP, a concession which provides a basis for the Law Judge to

---

disability).

[6] A "severe impairment" is one or a combination of impairments that "significantly limits [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c).

3

discredit her claim that her sleep apnea is a severe impairment. (R. 169, 170.)

Plaintiff seeks to justify her present failure to use a CPAP on the grounds of her inability to afford the machine. (Pl's Brief, pp. 6-7.) However, plaintiff's doctor referred her for financial assistance in obtaining a CPAP machine, and there is nothing in the record to show that she followed through with this referral. (R. 156.) In this sense, plaintiff simply failed to produce evidence upon which the Law Judge could have more favorably credited her testimony, and thus, put into question the Law Judge's credibility determinations. Irrespective of whether plaintiff could afford a CPAP machine, the record does not show that the condition significantly limits her ability to engage in basic work activities. Even though plaintiff has alleged that her sleep apnea causes low energy, fatigue, poor sleep, and shortness of breath, she has failed to suggest *how* these side effects are significant enough to place limitations on her ability to engage in basic work activities. Most importantly, there are no medical opinions to support a finding that plaintiff's sleep apnea creates limitations on her ability to work. Thus, the Law Judge's decision that plaintiff's sleep apnea is not a severe impairment is supported by substantial evidence.

Next, plaintiff argues that the Law Judge failed to properly address the impact of her obesity on her other impairments. (Pl's Brief, pp. 5-8.) Specifically, plaintiff points to the fact that she has sleep apnea, and she suggests that this condition is most likely secondary to her obesity. (Pl's Brief, p. 6.)

Although obesity is no longer a listed impairment, it still is considered a "medically determinable impairment" whose effects are to be considered when evaluating disability, including the severity of an individual's impairments. Social Security Ruling ("SSR") 02-01p, 2000 WL 628049 *1, *3. Moreover, SSR 02-01p provides that "the combined effects of obesity

4

Case 3:07-cv-00004-NKM-BWC    Document 14    Filed 09/11/07    Page 4 of 8    Pageid#: 57

with other impairments can be greater than the effects of each of the impairments considered separately." *Id.* at *1.

Plaintiff's argument that her obesity impacts her sleep apnea appears to be circular. On one hand she argues that her sleep apnea is secondary to her obesity. On the other hand, she argues that her sleep apnea is exacerbated by her obesity. The greater problem, however, is not with her argument but with the fact that there is an absence of medical evidence to establish that the combined effects of her obesity and sleep apnea place limitations on her ability to perform basic work activities.

Finally, plaintiff contends that the Law Judge's RFC[7] fails to account for all of her limitations. (Pl's Brief, pp. 8-11.) Specifically, plaintiff argues that arthritis in her lower back, right hip, and legs impacts her ability to stand and climb stairs, and she must lie down several times during the day. (Pl's Brief, p. 9.) She further argues that the record shows she has been treated for worsening low back pain radiating into the right leg, as well as for right leg weakness and cramps, right acromioclavicular (AC) joint osteoarthritis, degenerative joint disease, and a limited range of motion in her neck. (Pl's Brief, pp. 9-10.)

In support of her argument, plaintiff contends that on June 14, 2005 her low back pain was found to "limit her ability to work." (Pl's Brief, p. 9.) The record shows that she presented to the University of Virginia Health System on that date complaining of low back pain. (R. 173.) Contrary to plaintiff's argument, however, the doctor's note from this evaluation does not contain a medical opinion that her low back pain "limit[s] her ability to work." Instead, the record shows

---

[7]"Residual functional capacity" is defined as that which an individual is still able to do despite the limitations caused by his impairments. 20 C.F.R. § 404.1545(a).

5

that on that date she was referred for a MRI, which revealed only "mild" degenerative disease of the lumbar spine and degenerative changes of the right hip. (R. 160.) In a follow-up evaluation on July 18, 2005, the objective medical findings show that her straight leg raising test was negative, there were no neurological deficits, her motor was 5/5, and her sensations were intact. (R. 168-169.)

Having reviewed the entire record, the undersigned concludes that the Law Judge's finding that plaintiff's allegations regarding the severity of her symptoms were "not entirely credible" is supported by the evidence. While plaintiff argues that arthritis in her lower back, right hip, and legs is so severe that it affects her ability to stand and climb stairs, and that has she has to lie down several times a day to stretch her leg in an effort to ease the pain, she testified that she is being treated only with over-the-counter pain medications. (R. 191-192.) This testimony is confirmed by the medical record, which reveals that she has received only conservative treatment for her allegedly disabling pain. (R. 72, 113, 114, 120, 132, 156.)

The undersigned believes the record substantially supports the Law Judge's finding that plaintiff can perform a wide range of light work. The record contains the opinions of two record reviewing physicians, R.S. Kadian, M.D. and William C. Amos, M.D. (R. 142-149.) On November 29, 2004, Dr. Kadian concluded that plaintiff's allegations were only "partially" credible and that she retained the RFC to perform medium exertional work[8]. (R. 142-149.) On April 12, 2005, Dr. Amos evaluated plaintiff's records and affirmed this assessment. (R. 148.)

Plaintiff offers that the Law Judge's RFC finding cannot stand because "no examining

---

[8] If a claimant can perform medium exertional work, he or she can also perform light and sedentary work. 20 C.F.R. § 404.1567(b).

physician has offered an opinion regarding her work-related limitations." (Pl's Brief, p. 9.) In that connection, she argues that in order to discharge his duty to fully develop the record, the Law Judge should have ordered further evaluations. (Pl's Brief, p. 10.) Moreover, plaintiff contends that the opinions offered by the State's record reviewing physicians, Drs. Kadian and Amos, were offered prior to her "updated" medical records, which presumably she is arguing, would have impacted their findings. (Pl's Brief, p. 9.)

As plaintiff has conceded, there is *no objective medical evidence* to support her argument that she has work-related limitations. (Pl's Brief, p. 9.) The undersigned concludes that plaintiff's physicians have evaluated her impairments and treated her very conservatively, and the fact that her physicians have not found she has limitations on her ability to work neither reflects legal error on the part of the Law Judge nor suggests that the Commissioner failed to properly develop the record.

Likewise, plaintiff's claim that the opinions of record reviewing physicians were not informed by the "updated" medical records equally fails. The sleep studies performed on May 20, 2005 revealed that the use of a CPAP "eliminated" her apneas. (R. 174-183.) The evaluation on June 14, 2005 for low back pain, during which she was referred for a MRI revealed only "mild" degenerative disease of the lumbar spine and degenerative changes of the right hip. (R. 160, 173.) The evaluation on July 18, 2005 for complaints of low back pain, right leg weakness, and right arm numbness revealed no edema, negative straight leg raising test, 5/5 motor, intact sensations, and no neurological deficits. (R. 168-169.) Ibuprofen was the recommended treatment. (R. 169.) Nurse's notes from an evaluation on July 21, 2005 show that although plaintiff presented complaining of neck, head, and left hear pain, she left prior to being seen by a

7

doctor. (R. 165, 167.) Finally, the doctor's treatment notes from August 4, 2005 do not suggest that a physical exam of her back was even performed, and her low back pain complaint was not even addressed in the "Assessment/Plan" portion of the notes. (R. 161-162.) Thus, the Law Judge's RFC determination is supported by substantial evidence.

For these reasons, it is RECOMMENDED that an order enter AFFIRMING the Commissioner's final decision, GRANTING the Commissioner's motion for summary judgment and DISMISSING this case from the docket of the court.

The Clerk is directed to immediately transmit the record in this case to the presiding United States District Judge. Both sides are reminded that pursuant to Rule 72(b) they are entitled to note objections, if any they may have, to this Report and Recommendation within (10) days hereof. Any adjudication of fact or conclusion of law rendered herein by the undersigned not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1)(C) as to factual recitations or findings as well as to the conclusions reached by the undersigned may be construed by any reviewing court as a waiver of such objection. The Clerk is directed to send a certified copy of this Report and Recommendation to all counsel of record.

ENTERED: _____
U.S. Magistrate Judge

9-11-07
Date

8